**In re Russell Eugene SIMMONS, Elizabeth Gale Simmons, Debtors.**

**Bankruptcy No. 86–21632.**

United States Bankruptcy Court,
D. Kansas.

Sept. 29, 1987.

Kristen G. Stroehmann, Kansas City, Kan., for debtors.

Charles Ball, Kansas City, Kan., for Boatmen's Bank.

Lloyd C. Swartz, Topeka, Kan., Chapter 13 trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came for hearing on April 21, 1987, on debtors' motion for determination of secured status of Boatmen's First National Bank of Kansas City (hereinafter "the Bank"). The debtors appeared by and through counsel, Kristen G. Stroehmann. The Bank appeared by and through counsel, Charles Ball.

### FACTS

The facts in this case are not in dispute. The debtors filed their petition for relief under chapter 13 of Title 11, United States Code, on November 3, 1986. Citicorp Homeowners Service holds a first mortgage on the debtors' homestead in the amount of $24,404. The Bank holds a second mortgage on the debtors' homestead in the amount of $22,205.76. The Bank's loan was characterized as a "home improvement loan" and was not secured by any other property. The debtors have placed a value of $35,000 on the homestead. Since the Bank's second mortgage exceeds the value of the homestead minus Citicorp's lien by $11,110, the debtors seek to have that amount determined to be allowed as "unsecured" under section 506(a), and the lien avoided under section 506(d). The Bank objects on the grounds that section 1322(b)(2) prohibits modification of its lien.

### ISSUE

DOES THE SPECIAL NO–MODIFICATION PROVISO OF SECTION 1322(b)(2) PROTECT AN UNDER–COLLATERALIZED RESIDENTIAL SECOND MORTGAGEE FROM A REDUCTION THAT OTHERWISE COULD RESULT FROM SUB–DIVIDING ITS ALLOWABLE CLAIM INTO AN ALLOWED 100% SECURED CLAIM AND AN ALLOWED 100% UNSECURED CLAIM UNDER SECTION 506(a) AND AVOIDING THE UNSECURED CLAIM PORTION UNDER SECTION 506(d)?

### CONCLUSIONS OF LAW

At issue is the proper statutory interpretation of the scope of section 1322(b)(2), which states:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* ... (emphasis added)

The starting point in every case involving construction of a statute is the language itself. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). The plain meaning of the language is the primary, and ordinarily the most reliable source of interpreting the meaning of the statute. *Watt v. Alaska,* 451 U.S. 259, 266 n. 9, 101 S.Ct. 1673, 1678 n. 9, 68 L.Ed.2d 80 (1981). It is a well recognized canon of statutory construction, however, that a court should look beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute. *Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983). A court must not look merely to a particular clause in which general words are used, but must consider the entire statute and the objects and policy behind its enactment. *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974).

On its face, the plain language of section 1322(b)(2) appears to prohibit a reduction of an undersecured second mortgage. The statute forbids any modification of the terms of a loan secured only by a security interest in the debtor's principal residence. The term "modify," as used in section 1322(b)(2), means "... to make basic or important changes ..." or to "change in kind, degree, or amount." *In re Bradshaw,* 56 B.R. 742, 744–45 (Bankr.S.D. Ohio 1985) (*quoting In re Gwinn,* 34 B.R. 936, 944 (Bankr.S.D.Ohio 1983)). Certainly the debtors' proposed reduction of the lien is a basic and an important change.

However, a closer reading of the statute leads to an ambiguity. What is meant by the words "secured claims" in the phrase "modify the rights of *secured claims,* other than a claim secured only by a security interest in real property that is the debtor's principal residence." While the Bank may possess a "claim secured only by a security interest in real property that is the debtor's principal residence," is the whole claim in this case a "secured claim" or just that portion of the claim actually secured by the Bank's limited second mortgage interest in the residence?

If the Court were to apply section 506 to the Bank's claim, the answer is the latter. Section 506(a) bifurcates a secured debt into two components: (1) a secured claim equal to the fair market value of the encumbered property; and (2) an unsecured claim equal to the value of the lien which is in excess of the fair market value of the encumbered property. Section 506(d) of the Code deems voidable the value of liens in excess of the value of the encumbered property. *See In re Everett,* 48 B.R. 618 (Bankr.E.D.Penn.1985). Section 506 is a provision of general applicability to all bankruptcy proceedings. 11 U.S.C. § 103(a).

The legislative history on the enactment of section 1322(b)(2) is sparse at best. Of the limited amount available, however, the history appears to support the debtors' interpretation of section 1322(b)(2). The case of *In re Neal,* 10 B.R. 535 (Bankr.S.D.Ohio 1981) provided an excellent summary and interpretation of the legislative history. *Neal* found that § 1322(b)(2) only applied to "wholly" secured claims and stated in part:

A review of the evolution of the Chapter 13 provisions dealing with the rights of holders of secured claims provides some insight into congressional intent on the subject. The Commission on the Bankruptcy Laws of the United States ("Commission") (formed by Congress to study the bankruptcy laws with a view toward possible legislative revision) reported its findings and recommendations to the President, Chief Justice, and Congress on July 30, 1973. Section 6–201 of the Commission's proposed legislation, which was a part of that Report, included the following provision on the matter of secured claims:

"[A Chapter 13 plan] ... (2) may include provisions dealing with claims secured by personal property severally, on any terms, and may provide for the curing of defaults within a reasonable time and otherwise alter or modify the rights of the holders of such claims ..." Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Part II, 204 (1973). The Commission Bill thus preserved the concept of Chapter XIII under the Bankruptcy Act of 1898 by excluding from the scope of coverage claims secured in real estate. There was, however, for the first time, a limited right granted to a debtor to cure a prepetition default on a debt secured in residential real estate. This right was set forth in Section 6–201(4) of the Commission Bill.

While there were several proposals and counterproposals relative to the treatment of secured claims between the July, 1973 Report of the Commission and H.R. 8200, which was reported favorably to the House of Representatives of the 95th Congress by the House Judiciary Committee on September 8, 1977, § 1322(b)(2) of that bill exemplifies a significantly different treatment in Chapter 13 of holders of claims secured in real estate.

"[the plan may] ... (2) modify the rights of holders of secured claims or holders of unsecured claims ..." H.R. 8200, 95th Cong., 1st Sess. § 1322(b)(2) (1977).

Quite clearly, this version of the legislation proposed to grant a broad power to Chapter 13 debtors to tailor their plans in light of their total debt structure, including real estate mortgages. This concept had also appeared in previous House versions of the proposed bankruptcy legislation.

However, a separate bankruptcy bill was being contemporaneously considered by the Senate during the 95th Congress, and under the designation of S.2266, the Senate Judiciary Committee and the Senate Finance Committee jointly reported to the full Senate a different version of proposed bankruptcy legislation. The report was made on September 7, 1978, and contained the following language in § 1322(b)(2) relative to secured claims in Chapter 13 cases:

"[the plan may] ... (2) modify the rights of holders of secured claims (other than claims *wholly* secured by mortgages on real property) or of holders of unsecured claims ..." (emphasis added). S.2266, 95th Cong., 2d Sess. § 1322(b)(2) (1978).

The Senate version of the bankruptcy legislation supports the theory that congressional intent was to protect mortgage debt that was wholly (which, in its primary sense, means fully and completely) secured by the debtor's real estate. The postulation of this theory (and, due to the paucity of legislative comment, it is only that—an assumption) lends support to the thought that Congress envisioned creditors holding liens on real estate as always fully secured.

However, because of the inconsistencies existing between the two versions of the legislation, an informal conference was held among the managers of the legislation and a compromise bill was agreed upon. See, Klee, Legislative History of the New Bankruptcy Code, 54 Amer.Bank.L.J. 275, 290 (Summer, 1980). This resulted in the revision of § 1322(b)(2) of the Code to its final form:

"(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) ...

(2) modify the rights of holders of secured claims, other than a claim secured *only* by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;" 11 U.S.C. § 1322(b)(2).

There was no explanation as to the rationale for the change of the word *"wholly"* to the word *"only"*. There is some doubt in this Court's mind as to whether such change was intentional. Certainly the concept of "wholly" secured fits more neatly into the over-all statutory scheme.... [emphasis added]

*Id.* at 538–39. *See also, In re Paige,* 13 B.R. 713 (Bankr.S.D.Ohio 1981).

The case law on the issue appears to be somewhat split. On the creditor's (Bank) side, this Court located the cases of *In re Simpkins,* 16 B.R. 956 (Bankr.E.D.Tenn. 1982), and *In re Hynson,* 66 B.R. 246 (Bankr.D.N.J.1986) which found that to apply the provisions of § 506 would in large part vitiate the protection of section 1322(b)(2). In addition, the Bank cites specifically to *In re Bradshaw,* 56 B.R. 742, 747 (Bankr.S.D.Ohio 1985) which held

> In the present case, Huntington's second mortgage is fully secured only by an interest in the debtor's principal residence. Section 1322(b)(2) clearly prohibits modification of that claim. The interpretation of section 1322(b)(2) urged by appellees is broad and without support from the statutory language or the legislative history. Furthermore, the interpretation advanced by appellees severely limits the exception created by section 1322(b)(2). Congress is well aware of how to confine the scope of its statutes and the way in which broad or narrow exceptions are created. Section 1322(b)(2) is unambiguous. Accordingly, the appellees' plan cannot be allowed to modify the contract interest rate on the Huntington's claim; as proposed, the plan clearly violates section 1322(b)(2) and cannot be confirmed by the bankruptcy judge. The order of the bankruptcy judge is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion.

However, after a closer reading of *Bradshaw,* this Court finds that the case is not on point. In *Bradshaw,* the creditor was *fully* secured by its interest in the debtor's residence. The *Bradshaw* court specifically limited the effect of its decision to fully secured creditor cases when it stated that "[f]undamental to this Court's decision are two facts: first, that the creditor is fully secured by its interest in the debtor's principal residence and so clearly within the plain language of section 1322(b)(2)." *Id.* at 746. In the present case, of course, the Bank is *not* fully secured. As such, this Court finds that *Bradshaw* is unpersuasive.

On the other hand, there is ample case law supporting the debtors' position. In *In re Spadel,* 28 B.R. 537 (Bankr.E.D.Pa. 1983), Chapter 13 debtors sought by complaint to avoid the mortgage lien of a third mortgagee. *Spadel* examined the effect of section 1322(b)(2) on the ability of a debtor to modify a mortgagee's rights. The court took the position that:

> While HCDC [the secured creditor] may possess 'a claim secured only by a security interest in real property that is the debtors' principal residence,' it is not the holder of a 'secured claim' by virtue of § 506(a) of the Code, and, therefore, the exception set forth in § 1322(b)(2) does not apply to HCDC.

*Id.* at 540. In addition, the debtor cites specifically to the cases of *In re Everett,* 48 B.R. 618 (Bankr.E.D.Penn.1985), and *In re Whitener,* 63 B.R. 701 (Bankr.E.D.Pa. 1986). In both *Everett* and *Whitener,* the courts found that under section 506, when a mortgage secures a debt which is in excess of the value of the secured property, the excess is not an allowed secured claim but is rather an allowed unsecured claim.

After carefully considering the case on both sides of the issue and the legislative history, this Court must agree with the debtor's position. The special no-modification proviso of section 1322(b)(2) does *NOT* protect an under-collateralized residential second mortgage from a reduction that results from bifurcating its allowable claim into an allowed 100% secured claim and an allowed 100% unsecured claim under section 506(a) and avoiding the unsecured claim under section 506(d). The cases which hold otherwise blindly focus on the clause in section 1322(b)(2) that states: "other than a claim secured only by a security interest in real property that is the debtor's principal residence." *See, e.g., Hynson,* 66 B.R. at 253. The courts like *Hynson* just ignore the clause immediately preceding that states: "modify the rights of holders of *secured claims.*" This Court must interpret this clause as specifically

limiting the section 1322(b)(2) protection to fully secured claims.

This Court reaches its decision being ever mindful that the Bankruptcy Code is to be equitably interpreted to accomplish its purposes; *see Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); and that one of the primary purposes of bankruptcy law is to give the honest debtor "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). My ruling certainly promotes this fresh start purpose by not strapping the debtor with preexisting unsecured debt.

Accordingly, this Court finds that 506(a) & (d) are applicable to the present facts. As such, the Court further finds that the Bank holds an $11,096 secured claim and an $11,110 unsecured claim.

IT IS THEREFORE, BY THE COURT, ORDERED AND ADJUDGED That Boatmen's First National Bank of Kansas City holds a secured claim in the amount of $11,096 and an unsecured claim in the amount of $11,110.

IT IS FURTHER, BY THE COURT, ORDERED That the debtors' plan can modify the unsecured amount of $11,110.