**In re Charles David RUSSELL and Melody Ann Russell, Debtors.**

**Civ. No. A4–88–150, A4–88–073.**

**Bankruptcy No. 87–05818.**

United States District Court, D. North Dakota, Northwestern Division.

Aug. 9, 1988.

Jon F. Kroke, Beach, N.D., for Lomas & Nettleton Co.

Ross H. Espeseth, Bismarck, N.D., for debtors.

Phillip D. Armstrong, Minot, N.D., trustee.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

The Lomas & Nettleton Company, a Creditor of the above-named Debtors, appealed to the District Court, from an Order Confirming the Debtor's Chapter 13 Plan entered on March 17, 1988. The undisputed facts of this case are as follows. On April 1, 1985, the Debtors executed a promissory note payable to the Lomas & Nettleton Company in the principal sum of Sixty Thousand Three Hundred Dollars, ($60,300), with interest from that date at the rate of thirteen percent (13%), payable in monthly installments of $667.53 commencing on the 1st day of June, 1985, and on the first day of each month thereafter until fully paid. To secure payment of that note, the Debtors executed and delivered to

the Lomas and Nettleton Company a real estate mortgage on their residence.

On September 14, 1987, the Debtors filed a Chapter 13 Bankruptcy Petition. According to the Debtors' petition, the debt owed by the Debtors to the Lomas & Nettleton Company was $81,237.01. Under the Debtors' proposed plan, the Lomas & Nettleton Company was to receive $45,000 amortized over 15 years at ten percent (10%). The Debtors reached these figures by using the fair market value of the residence ($45,000), and using an interest rate which they believed was comparable to a 30 year real estate mortgage during the same period. The Debtors further argued that since the fair market value of the residence was only $45,000, the Lomas & Nettleton Company's claim was only secured up to that amount and any amount over the $45,000 should be treated as an unsecured claim. The Debtors cited 11 U.S.C. § 506 as authority to bifurcate the claim.

The Lomas & Nettleton Company (Lomas) objected to the proposed plan and argued that the proposed bifurcation of their claim violated 11 U.S.C. § 1322(b)(2). Lomas claimed that the language of § 1322(b)(2) dealing with claims secured only by a security interest in a debtor's residence precluded impairment and bifurcation of their claim by the Debtors. The Bankruptcy Court disagreed, and held that the language of § 506 overruled the language of § 1322(b)(2), and therefore, the Debtors could bifurcate Lomas's claim. However, the court found that the secured portion of the debt owed to Lomas could not be modified and therefore reinstated the original terms of the mortgage to be paid on a principal of $45,000, the fair market value of the residence. The balance of the debt owed to Lomas & Nettleton would then fall into the general unsecured claim category. The Lomas and Nettleton Company has appealed the confirmation of the Debtors' Chapter 13 plan.

The issue before this court is whether in a Chapter 13 bankruptcy 11 U.S.C. § 1322(b)(2) prohibits modification of a secured claim represented by an under-collateralized mortgage in the Debtors' residence or whether 11 U.S.C. § 506 operates to allow the Debtors to bifurcate the claim into secured and unsecured portions. Many courts have been faced with deciding the interplay of these two sections, and the cases seem evenly split. Since the issue on appeal is based upon a question of law, the District Court may affirm, modify, or reverse the judgment of the Bankruptcy Court's order in accordance with Rule 8013 of the Bankruptcy rules. Specifically, it must be determined which section of 11 U.S.C., § 506 or § 1322(b)(2) is controlling in the case at bar.

In confirming the Debtors' plan, the court relied upon the case of *In re Simmons*, 78 B.R. 300 (Bkrtcy.D.Kan.1987). In *Simmons*, the debtor filed a Chapter 13 plan which modified an existing mortgage agreement between themselves and a creditor bank which had a second mortgage on the debtors' homestead. *Id.* at 300. The first mortgage, held by a different creditor was for $24,404. *Id.* The creditor bank held a second mortgage in the amount of $22,205.76 it had received when it gave the debtors a loan which was characterized as a "home improvement" loan. *Id.* The debtors' homestead was valued at $35,000. *Id.*

The debtor argued that since the creditor bank's mortgage exceeded the value of the homestead minus the first mortgage lien by $11,110, this excess should be allowed as "unsecured" under § 506(a) and the lien avoided under § 506(d). *Id.* The creditor bank objected on the grounds that § 1322(b)(2) prohibited the modification of the lien. *Id.* Despite the objection, the court agreed with the debtor and held that the no-modification proviso concerning Chapter 13 plans did not protect residential second mortgages from reduction that would result from bifurcating its allowable claim into an allowed 100% secured claim and an allowed 100% unsecured claim under section 506(a) and avoiding the unsecured claim under section 506(d). *Id.* at 303.

The court reached its decision by interpreting the language of § 1322(b)(2) to mean that only fully secured claims could

be afforded the protection of the section. *Id.* at 304. This interpretation was based upon the court's reading of the legislative history surrounding § 1322(b)(2). *Id.* at 301–03. Therefore, the debtor was able to modify the creditor bank's lien into secured and unsecured portions and avoid the unsecured portion. *Id.* at 304. Although the Bankruptcy Court in the case at bar found the *Simmons* court's holding controlling, this court finds its reasoning unpersuasive and analysis lacking.

The plain meaning of the language is the primary, and ordinarily the most reliable source of interpreting the meaning of the statute. See, *Watt v. Alaska,* 451 U.S. 259, 266 n. 9, 101 S.Ct. 1673, 1678 n. 9, 68 L.Ed.2d 80 (1981). Under 11 U.S.C. § 1322(b)(2), it states that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal place of residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (West 1987). Under 11 U.S.C. § 101, a claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured. 11 U.S.C. § 101(4)(a) (West 1987). A security interest is defined as a "lien created by an agreement." 11 U.S.C. § 101(45) (West 1987). Finally, a lien is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. 101(33) (West 1987). Clearly, in the case at bar, the mortgage held by the Lomas & Nettleton Company qualifies as a claim secured only by a security interest in the Debtors' principal place of residence.

The *Simmons*'s court and the Bankruptcy court place great weight on the fact that the collateral to which the security interest attached, was less than the amount of the claim asserted by the objecting creditors. They relied on the language of § 506 to bifurcate the creditors claim into secured and unsecured portions. Under pertinent parts of 11 U.S.C. § 506, it states:

[ (a) ] An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under Section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest of the amount so subject to setoff is less that the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (West 1987). This section is a provision of general applicability in cases under Chapter 7, 11, and 13 of the Bankruptcy Code. See, 11 U.S.C. § 103(a).

On the other hand, 11 U.S.C. § 1322(b)(2) only applies in Chapter 13 cases. See, 11 U.S.C. § 103(h). As stated above, a plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal place of residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. 11 U.S.C. § 1322(b)(2) (West 1987).

When two statutes conflict, as the case is here, a generally accepted tenet of statutory construction provides that regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically dealt with in another part of the same enactment. See, *Maiatico v. United States,* 302 F.2d 880, 886 (D.C.Cir.1962); *In re Brown,* 329 F.Supp. 422, 425 (S.D.Iowa 1971). This court accepts this tenet. Therefore, the specific language of § 1322(b)(2) would prevail over the general application language of § 506. Other courts ruling on the interplay of § 1322(b)(2) and § 506 have ruled similarly.

In the case of *In re Hynson,* 66 B.R. 246 (Bkrtcy.D.N.J.1986), the debtor proposed a

Chapter 13 plan which would modify the the rights of a creditor who held a secured claim in the form of a second mortgage on the debtors principle residence. *Id.* at 247. As in *Simmons* and in the present case, the creditors claim exceeded the value of the collateral. *Id.* at 248. The debtor's proposed plan did not provided payment to the second mortgage creditor because the value of the house was less than the total of the two mortgages. *Id.* Therefore, the debtor concluded that the second mortgage was unsecured and void under 11 U.S.C. 506(a) and (d). *Id.* In its analysis, the court held that § 1322(b)(2) prevailed over § 506 and therefore denied confirmation of the debtors' plan. *Id.* The court stated: "To apply the cramdown provision of 11 U.S.C. § 506 to creditors whose claims are secured solely by the debtor's principal residence, would in large part vitiate the protections of 11 U.S.C. § 1322(b)(2). It would also be at odds with the clear intent of Congress to protect a lender's security when a lender is secured only by a security interest in a Chapter 13 debtor's home." *Id.* at 252. The court further stated: "The concept that only a 'secured claim' and not an 'unsecured claim' is protected within the ambit of 11 U.S.C. § 1322(b)(2), carries the syntax of the Bankruptcy Code to an absurd conclusion which is at odds with the general principles of statutory construction and with the clear legislative intent of 11 U.S.C. § 1322(b)(2)." *Id.* Based on this reasoning, the court denied confirmation of the debtor's plan because it modified a secured claim secured only by a security interest in the debtor's principal residence, in violation of § 1322(b)(2). *Id.* at 253.

A more recent case following this same line of reasoning is *In re Catlin*, 81 B.R. 522 (Bkrtcy.D.Minn 1987). In *Catlin*, a creditor bank, which held a first mortgage on the debtors principal residence, objected to the debtors' proposed Chapter 13 plan because it did not provide for the interest payments on amounts in arrears. *Id.* The creditor argued that the debtor's plan could only be confirmed over its objection if it was paid interest on the full amount of the arrearages at the contract rate from the date of confirmation, citing 11 U.S.C. § 1325(a)(5)(B). *Id.* It also contended that the allowed amount of its claim at confirmation includes interest on arrearages at the contract rate from the date the petition was filed to the date of confirmation, citing 11 U.S.C. § 506(b). *Id.*

The debtors argued that the creditor was not entitled to interest under 11 U.S.C. § 1325(a)(5)(B) and that the claim was governed solely by § 1322(b)(2) and (b)(5). *Id.* Payment of interest, they argued, was a prohibited modification of the contract within the meaning of § 1322(b)(2). *Id.* In the alternative, the debtors asserted that the claim to arrearages was not a secured or unsecured claim within the meaning of 11 U.S.C. § 1325(a)(5)(B), and that it must be treated in accordance with the parties contract and not applicable bankruptcy law. *Id.*

After discussing the two provisions, the court stated:

[To] the extent § 1322(b)(2) and (5) are inconsistent with and contradictory to these Chapter 5 statutes, the § 1322(b)(2) and (5) provisions supersede them. Accordingly, in a Chapter 13 case, the allowed amount of a claim secured only by a security interest in a principal residence of a debtor is, at filing, the balance owing on the debt without regard to the value of the collateral—§ 506(a) notwithstanding. Application of § 506(a), where the value of the collateral is less than the debt, would modify the rights of the holder of a claim secured only by a security interest in the principal residence of the Debtor beyond the permissible impairment provided in § 1322(b)(2) and (b)(5).

*Id.* Based upon these findings the court denied the debtors plan.

This court believes that the line of cases following the reasoning and analysis of *Catlin* and *Hynson* to be controlling in the case at bar. The court holds that these opinions are more in keeping with the clear meaning of the statute and intent of the legislature. Therefore, if this line of reasoning is applied in the case at bar, it is clear that the Debtors' plan should not have been confirmed over Lomas and Net-

tleton Company's objection. As stated above, in Chapter 13 cases, the allowed amount of a claim secured only by a security interest in a principal residence of the debtors is, at filing, the balance owing on the debt without regard to the value of the collateral. Therefore, because the Debtors' plan only provided for payment of the fair market value of the collateral and not for the full amount owing on the debt at the time of the filing, the proposed plan modified a claim secured only by a security interest in real property that is the Debtors' principal place of residence, in violation of § 1322(b)(2) of the Bankruptcy Code.

Based on the foregoing,

IT IS HEREBY ORDERED: THAT THE ORDER OF THE BANKRUPTCY COURT, DATED MARCH 17, 1988, BE REVERSED.