In re Stanley **HARRIS**, Sr. and Deborah **Harris**.

Civ. A. No. 86–2952.

United States District Court, D. New Jersey.

Jan. 19, 1989.

Brad J. Spiller, Camden, N.J., for appellant.

Mark H. Kelly, Fischer, Kagan, Fredericks, Ascione, Zaretsky & Scarinci, Clifton,

N.J., for appellee, American Nat. Funding and Investment Co., Inc.

## OPINION

RODRIGUEZ, District Judge

Debtors Stanley and Deborah Harris appeal an order by the bankruptcy court denying confirmation of debtors' proposed Chapter 13 plan. The bankruptcy court denied the plan because it included the cramdown of two mortgages secured only by the debtors' principal residence in violation of the provisions set forth in 11 U.S.C. § 1322(b)(2). This section prohibits modification of the rights of a holder of a claim that is secured only by a security interest in real property that is the debtor's principal place of residence. Appellants argue, however, that the two mortgages are unsecured under the definition of 11 U.S.C. § 506 and that 11 U.S.C. § 1322(b)(2) does not apply to unsecured or undersecured claims. In addition, debtors claim that the protection afforded by 11 U.S.C. § 1322(b)(2) does not apply to short-term home improvement loans.

For the reasons stated herein, this court holds that the protection afforded under § 1322(b)(2) does not apply to unsecured and undersecured loans. In addition, the court holds that the § 1322(b)(2) protection does apply to home improvement loans. Because the bankruptcy court held that the section protects any claim secured only by the debtor's principal residence, the bankruptcy court is reversed and the case is remanded.

## I.

The first mortgage on debtors' residence is held by United First Mortgage Corporation (hereinafter "United"). In May 1983, debtors executed a home repair installment sale contract and consumer note in favor of American National Funding and Investment Co. in order to finance installation of a swimming pool for debtors' residence. The note was assigned to Metropolitan Federal Savings and Loan Association (hereinafter "Metropolitan"). Debtors also executed a second mortgage, recorded on June 20, 1983, on their residence to Metropolitan as security for the note. A third mortgage on debtors' residence is held by Broadway Bank and Trust (hereinafter "Broadway").[1] Debtors' brief indicates that this mortgage was issued to Broadway in order to finance the installation of home siding.

Debtors value their residence at $43,000.00, with an estimated amount due to United under the first mortgage of $44,000.00. Debtors estimate the amount due to Metropolitan under the second mortgage to be $11,212.86. Debtors value the amount due Broadway under the third mortgage to be $9,435.82.

Under the debtors' proposed plan, United would receive the sum of $9,565.52, the amount necessary to cure debtors' default under the first mortgage. Debtors also would make regular monthly mortgage payments to United outside of the Chapter 13 plan. Metropolitan would receive the sum of $2,000.00 which would cure debtors' default on the second mortgage. The plan also provided for the cramdown of the unsecured balance of $9,212.86 owed to Metropolitan. Debtors' plan further provided for the cramdown of the entire amount owed to Broadway under the third mortgage and for the payment of 20 percent of the claims held by unsecured creditors.

The bankruptcy court denied confirmation of the plan holding that the plan modified claims in violation of 11 U.S.C. § 1322(b). The court based its decision on the reasoning articulated in *In re Hynson*, 66 B.R. 246 (Bankr. D.N.J.1986). In *Hynson*, the court, after a lengthy analysis, held that the language of § 1322(b)(2) does not specifically limit its protection to a *se-*

---

1. The record is not clear as to whether Broadway holds a second or third mortgage. Debtors claim that Broadway holds the second mortgage. Metropolitan asserts that its mortgage was recorded prior to the Broadway mortgage. The resolution of this dispute, however, is not determinative of the issues before the court. Therefore, for the purposes of this opinion, it will be assumed that Metropolitan holds the second mortgage and that Broadway holds the third mortgage.

*cured* claim secured only by a security interest in real property that is the debtor's principal residence. *Hynson*, 66 B.R. at 253.

Debtors claim that 11 U.S.C. § 1322(b)(2) does not prohibit the modification of claims that are not "secured" claims as defined by 11 U.S.C. § 506(a). Debtors argue that part of their second mortgage and 100 percent of their third mortgage are unsecured since debtors' residence lacks sufficient value to support those claims. For this reason, debtors claim that the bankruptcy court erred in denying confirmation.

Appellees argue that the Bankruptcy Court was correct in applying § 1322(b)(2) so as to deny confirmation of debtors' proposed Chapter 13 plan. Appellees maintain that the plain language of § 1322(b)(2) does not allow a debtor to modify any mortgage debt which is secured only by the debtor's principal residence.

The issue on appeal concerns conclusions of law that are subject to *de novo* review by the district court.[2]

## II.

Determining whether the protection afforded under § 1322(b)(2) applies to undersecured and unsecured claims requires analysis of two sections of the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Bankruptcy Code). The conflict arises between the general definition section, 11 U.S.C. § 506, and the more specific chapter 13 provision contained in 11 U.S.C. § 1322(b)(2).

Section 506(a) of the Bankruptcy Code dictates to what extent a claim is a "secured claim" for bankruptcy purposes. The section is one of general applicability that applies in cases under Chapters 7, 11 and 13 of the Bankruptcy Code. 11 U.S.C. § 103(a). Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property,* or to the extent of the amount subject to setoff, as the case may be, *and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.* Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. (emphasis added.)

Section 1322(b)(2), which applies only in cases filed under Chapter 13 of the Bankruptcy Code, defines whether a plan may modify rights of holders of claims. Specifically, the section provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> (2) *modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; (emphasis added.)

The crucial issue is whether the above emphasized language of § 1322(b)(2) is specifically limited to protection of "secured" claims as defined by § 506(a), or whether such language includes any "claims" that are secured only by a security interest in the debtor's principal residence, including undersecured claims.

---

**2.** Appellees also argue that this court should dismiss the complaint because debtors allegedly failed to serve appellees with a designation of the record within the time period provided under Bankruptcy Rule 8006. It is clear from the record that debtors filed the designation of the record with the bankruptcy court within the time period allowed under Rule 8006. In addition, appellees have not shown any prejudice or bad faith with respect to the assertion that debtors failed to comply with the procedural requirements of Rule 8006. Accordingly, this court declines to dismiss the appeal. *Cf. In re Comer,* 716 F.2d 168 (3d Cir.1983) (district court did not err in declining to dismiss appeal on basis of four-day delay of filing time required under Rule 8006).

A number of bankruptcy courts have attempted to reconcile the two sections. The cases are split in determining whether the protection afforded by § 1322(b)(2) applies only to fully secured claims or whether it also applies to undersecured claims. Some bankruptcy courts, including the United States Bankruptcy Court, District of New Jersey, have held that the protection does apply to undersecured claims. *See, e.g., In re Hynson,* 66 B.R. 246, 253 (Bankr.D.N.J. 1986); *In re Hemsing,* 75 B.R. 689, 692 (Bankr. D.Mont.1987). Other bankruptcy courts have held that such protection applies only to claims that meet the § 506(a) secured claim definition. *See, e.g., In re Simmons,* 78 B.R. 300, 303 (Bankr.D.Kan. 1978); *In re Neal,* 10 B.R. 535, 540 (Bankr. S.D.Ohio 1981); *In re Spadel,* 28 B.R. 537, 540 (Bankr.E.D.Pa.1983).

Two recent district court cases have reached opposite conclusions. In *In re Hougland,* 93 B.R. 718 (D.Or.1988), the court held that the no-modification clause of § 1322(b)(2) protects a claim only to the extent "that the claim is actually secured." *Id.* To the contrary, the court in *In re Russell,* 93 B.R. 703 (D.N.D.1988) following the reasoning of *In re Hynson,* held that § 1322(b)(2) prevented modification of a claim secured only by a security interest in the debtor's principal residence "without regard to the value of the collateral." *Id.*

In determining whether the protection of § 1322(b)(2) applies to all claims secured only by the debtor's principal residence, the court must examine the legislative intent behind the statute through analysis of the statutory language and policy behind the statute. In analyzing the construction of the statute, "the starting point" is the "language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). In addition, the "plain meaning" of the language is the "primary, and ordinarily the most reliable, source of interpreting the meaning of a statute." *Watt v. Alaska,* 451 U.S. 259, 266, n. 9, 101 S.Ct. 1673, 1678, n. 9, 68 L.Ed.2d 80 (1981), quoting *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.) *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

On its face, § 1322(b)(2) allows "modification of the rights of holders of *secured claims,* other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis added). However, it is ambiguous whether the term "secured claim" applies only to claims that meet the § 506 definition for secured claims or whether it applies to any claim secured by the residence. For example, in *Hynson,* the court focused on whether the creditor had a "claim" secured by the principal residence rather than a "secured claim" secured by the residence as defined by § 506. 66 B.R. at 253. Conversely, the *Simmons* court focused on the term "secured claim" in holding that § 506 defined the scope of the § 1322(b)(2) protection. 78 B.R. at 303. Because the language of the statute is ambiguous, the court must examine the legislative history to determine whether this exception applies to secured claims as defined by § 506.

The legislative history of § 1322(b)(2) has been used by different courts to reach contrary results on this issue. For example, in *In re Neal,* the court, after extensive study of the legislative history, held that § 1322(b)(2) applied only to claims wholly secured by the principal residence. 10 B.R. at 538–40. To the contrary, the court in *In re Hynson,* utilizing the same history, held that application of the cramdown provisions to claims secured solely by the debtor's principal residence would be at odds with the clear intent of Congress. 66 B.R. at 252–53.

Determination of the legislative intent is also complicated by the fact that a portion of the statute was deleted during the compromise sessions between the House of Representatives and the Senate during the drafting of the Bankruptcy Code. The Senate version of § 1322(b)(2) provided that the plan may

> modify the rights of holders of secured claims (other than claims *wholly* secured by mortgages on real property) or of holders of unsecured claims ...

10 B.R. at 539 (emphasis added) (quoting S.2266, 95th Cong., 2d Sess. § 1322(b)(2) (1978)). Obviously, had the Senate version been enacted only wholly secured claims *i.e.*, those claims meeting the § 506(a) definition of secured claims, would be entitled to the protection.[3] The House version, however, provided that the plan may "modify the rights of holders of secured claims or holders of unsecured claims." 10 B.R. at 538 (quoting H.R. 8200, 95th Cong., 1st Sess. § 1322(b)(2) (1977)). Under this version, no claims would receive protection.

The compromise version, in relevant part, changed the "wholly" in the Senate version to "only" which resulted in the final form of § 1322(b)(2) that the plan may "modify the rights of holders of secured claims, other than a claim secured *only* by a security interest in real property that is the debtor's principal residence...." It is clear that this version represents the intent of Congress to protect home mortgage lenders. *See, e.g., In re Seidel*, 752 F.2d 1382, 1387 (9th Cir.1985) (court compelled by "legislative history and plain meaning of subsection (b)(2) to uphold Congress' intention to protect home mortgage lenders"). However, it remains unclear whether those lenders must hold secured claims under the § 506 definition to be afforded protection.

■ After careful review of the conflicting cases and the legislative history, this court holds that the § 1322(b)(2) protection applies only to claims that are "secured claims" as defined by § 506(a). The court rejects the *Hynson* line of cases that focus on the word "claim" in the clause "other than a claim secured only by a security interest in real property that is the debtor's principal residence." 66 B.R. at 253. The *Hynson* approach ignores the preceding clause that states that a plan may "modify the rights of holders of *secured claims*." *See Simmons*, 78 B.R. at 303–04. The section provides in full that the plan may "modify the rights of holders of *secured claims, other than a claim secured only*

by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims." (emphasis added). Clearly, when read in its entire context, the exception clause applies only to those claims that are secured claims as defined by § 506. In addition, the last clause of § 1322(b)(2) adds further support that unsecured claims as defined by § 506(a) may be modified, even those claims that are secured by the debtors' principal residence.

This court's holding attempts to reconcile the different policies behind the bankruptcy code. First, the decision will "promote [the] fresh start purpose" of bankruptcy law "by not strapping the debtor with preexisting unsecured debt." 78 B.R. at 304. Second, this decision keeps intact the protection of claims that are secured by adequate unencumbered collateral while at the same time allowing debtors the opportunity to rehabilitate their debt without the hinderance of liens that lack equity security in the property. *See, e.g., In re Shaffer*, 84 B.R. 63, 66 (Bankr.W.D.Va.1988) ("It is hardly conceivable that Congress could have intended that Section 1322 protect subordinate fourth or fifth or sixth liens which in fact may totally lack equity security in the property.") Finally, this court does not agree with the *Hynson* court's reasoning that "to apply the cramdown provisions of 11 U.S.C. § 506 to creditors whose claims are secured solely by the debtor's principal residence, would in large part vitiate the protections of 11 U.S.C. § 1322(b)(2)." 66 B.R. at 252. In addition, the court rejects the statutory construction argument that the specific language of § 1322(b)(2) prevails over the general language of § 506. *See In re Hynson*, 66 B.R. at 249. Instead, this court finds that the *Hynson* court's interpretation runs afoul of the fresh start policy of the Code by allowing creditors to avoid modification of their claims by taking "marginally-secured junior mortgages" on residential real

---

**3.** The *Neal* court used the Senate version to support its determination that Congress intended § 1322(b)(2) to protect only creditors holding fully secured liens. 10 B.R. at 539. How-

ever, as the *Neal* court pointed out, there is no explanation as to why the word "only" replaced the word "wholly." *Id.*

estate. *See Neal*, 10 B.R. at 540. *See also In re Hougland*, 93 B.R. 718 (it would be "inconsistent" for fresh start purposes to allow creditor "to do better under Debtor's Chapter 13 plan than if debtors had not filed at all"). Clearly, this type of protection was not envisioned by the legislature. As the *Neal* court stated:

> [I]t would violate the spirit of the Chapter 13 law, as well as the legislative intent of Congress, to allow FMCC to veto confirmation of a Chapter 13 plan where, in the final analysis, it is receiving no less than the full benefit of its bargain as that benefit extended at the time of the filing of this Chapter 13 petition. It is well to remember that the assertion of the rights of a creditor in a bankruptcy case rests, under the Code, on the status of that creditor as the holder of a claim, either secured, unsecured, or both.

*Id.* at 540.

Because the bankruptcy court applied the protection of § 1322(b)(2) to claims that were not secured by adequate unencumbered collateral and thus failed to meet the § 506(a) definition of a "secured claim", the decision must be reversed and remanded. On remand, the court should apply § 506(a) and bifurcate where necessary any creditor's claim to an allowable secured claim and unsecured claim. Only those claims that are secured under § 506(a) will be entitled to the protection afforded by section 1322(b)(2), and the exception provided in § 1322(b)(2) will not apply to any unsecured claim.

### III.

Finally, debtors contend that the exception provided under § 1322(b)(2) was intended by Congress to apply solely to long-term purchase mortgages secured only by a debtor's residence. However, § 1322(b)(2) as enacted provides that the plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

While a number of courts have recognized that the Congressional intent of the special protection of § 1322(b)(2) was to protect holders of long-term home mortgages and not junior liens, *see, e.g., In re Morphis*, 30 B.R. 589, 592–93 (Bankr.N.D. Ala.1983); *United Companies Financial Corp. v. Brantley*, 6 B.R. 178, 189 (Bankr. N.D.Fla.1980), the plain language of the statute is not so limited. *In re Simpkins*, 16 B.R. 956, 966 (Bankr.E.D.Tenn.1982). In addition, as previously stated, the legislative history surrounding the enactment of § 1322(b)(2) is sparse. This court will not override the plain language of the statute, which does not limit its application to long-term money purchase mortgages. *See, e.g., In re Hobaica*, 65 B.R. 693, 695–96 (Bankr.N.D.N.Y.1986) (holding that under any reading of § 1322(b)(2), the debtor's proposed plan could not modify the rights of a creditor holding a short-term, non-purchase money loan secured only by the debtor's principal residence). Thus, the court rejects debtors' argument that § 1322(b)(2) does not apply to short-term home improvement loans.[4]

In conclusion, this court holds that § 1322(b)(2) protects only those claims that are secured as defined by § 506(a). In addition, the court holds that § 1322(b)(2) applies to short-term home improvement loans which meet the § 506(a) definition for secured claims.

An appropriate order will be entered.

---

**4.** Debtors do not argue that the second and third loans are non-home related loans; therefore, the court need not decide whether short-term, non-home-related finance company loans that are secured claims under § 506(a) are within the § 1322(b)(2) protection. *Compare In re Shaffer*, 84 B.R. at 65 ("short-term, non-home-

related finance company loans not within the Congressional intended scope of section 1322(b)(2)") with *In re Simpkins*, 16 B.R. at 972 ("statute itself cannot be construed to apply only to the claims of lenders engaged only in home financing.")