**In re Michael Marne ROSS and Karen Kelly Ross, Debtors.**

**Bankruptcy No. 89–03217–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

Nov. 22, 1989.

760

Kenneth C. McCoy, Oklahoma City, Okl., for debtors.

Joe M. Anthis, Oklahoma City, Okl., for creditor.

## ORDER ON RENEWED OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

PAUL B. LINDSEY, Bankruptcy Judge.

On June 23, 1984, debtors executed a promissory note for "improvements and business" in favor of Local Federal Savings and Loan Association ("Local") and gave a second mortgage on debtors' home as security. On or about January 30, 1989, Local tendered the sum of $61,640.30 to American Mortgage and Investment Company, the first mortgage holder, thereby acquiring the first mortgage loan on debtors' home. Local asserts that it took this action in order to protect its second mortgage position, as the first mortgage note was then in default. On February 21, 1989, Local filed an action to foreclose the second mortgage. On May 12, 1989, a Journal Entry of Judgment of $22,544.69 was entered in favor of Local in the second mortgage foreclosure action. The balance of the first mortgage at that time was $64,562.05.

On May 22, 1989, debtors filed for relief under Chapter 13 of the Bankruptcy Code.

Debtors' amended petition divides Local's secured claims into two components. The first component describes Local's first mortgage as being in the amount of $61,-700, with arrearages of $6,221.88. The proposed plan provides for regular monthly payments of $691.32 and, in addition, forty-eight monthly installments of $129.63 to cure the arrearage. The second component describes Local's claim under the second mortgage of $22,544.69. Debtors contend that the fair market value of the property is $65,000, subject to the first mortgage, leaving a secured value of $437.95 attributable to the second mortgage. Under debtors' plan, Local would be paid this latter amount, plus interest, in forty-eight monthly installments. The balance of Local's second mortgage, $22,106.74, would be treated as unsecured and would receive through the plan, as would all other unsecured creditors, approximately four percent of its value.

Local's objection to debtors' amended plan is that it contemplates the bifurcation of the second mortgage into secured and unsecured portions, under 11 U.S.C. § 506(a) and modifies Local's rights. Local argues that 11 U.S.C. § 1322(b)(2) prohibits modification because the note is secured only by a security interest in real property that is debtors' principal residence. Local relies, at least in part, on this court's ruling in *In re Tinsley*, Case No. BK–88–5022–LN (June 27, 1989). Local also argues that it is preposterous to believe that it would have paid $61,640.30 in order to protect a second mortgage position amounting to only $437.95.

Debtors, after reviewing the authorities discussing the relationship between 11 U.S.C. § 506 and § 1322(b)(2), request this court to reconsider at least one element of the position taken by it in *Tinsley*, in light of recent decisions from other jurisdictions.

### CAN SECTIONS 506 AND 1322(b)(2) COEXIST?

In providing for the determination of secured status of claims, 11 U.S.C. § 506(a) states:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to

setoff is less than the amount of such allowed claim.

Insofar as it is applicable here, the provisions of § 506(d) are as follows:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

A chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2).

There appear to be at least three ways in which to analyze the interplay between §§ 506(a) and 1322(b)(2). Under the first, it is noted that § 506 applies in cases under chapters 7, 11, 12 and 13, [11 U.S.C. § 103(a) ], and that, as a provision of general applicability, it may be limited by more specific provisions, such as § 1322(b)(2), which applies only in chapter 13 cases. *In re Hynson*, 66 B.R. 246, 250 (Bankr.D.N.J. 1986). The *Hynson* court held that the unsecured portion of a junior lienholder's claim may not be avoided by operation of section 506(d), as such would violate section 1322(b)(2). *Id.* at 253. *See also In re Russell*, 93 B.R. 703 (D.N.D.1988); *In re Brown*, 91 B.R. 19 (Bankr.E.D.Va.1988); *In re Catlin*, 81 B.R. 522 (Bankr.D.Minn. 1987); and *In re Hemsing*, 75 B.R. 689 (Bankr.D.Mont.1987). The *Hynson* reasoning was subsequently rejected in *In re Harris*, 94 B.R. 832, 836 (D.N.J.1989). The *Harris* court held that the protection of § 1322(b)(2) applies only to claims that are "secured claims" as defined by and determined under § 506(a). *Id.* at 836. *See also In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989); *In re Kehm*, 90 B.R. 117 (Bankr.E. D.Pa.1988); and *In re Caster*, 77 B.R. 8 (Bankr.E.D.Pa.1987).

The second analysis presupposes that the purpose of § 1322(b)(2) is to protect long-term purchase money mortgage lenders, and not short-term finance company lenders, and holds that claims of undersecured second mortgage holders may be modified. *In re Bruce*, 40 B.R. 884, 886 (Bankr.W.D. Va.1984); *accord In re Simmons*, 78 B.R.

300 (Bankr.D.Kan.1987). The *Simmons* court held that § 1322(b)(2) does not protect undersecured junior mortgage holders and § 506(d) may be applied to void the unsecured portion of such claims. *Id.* at 304.

The third analysis holds that basic rules of statutory construction require § 1322(b)(2) to be read as consistently as possible with § 506, and that § 1322(b)(2) protects security interests which really exist rather than those which appear to be fully secured, but which in reality are undersecured. *In re Caster*, 77 B.R. 8, 13 (Bankr.E.D.Pa.1987). The *Caster* court found that § 1322(b)(2) prevents debtors from changing the payment terms of claims based on mortgages which are fully secured. *Id.* at 13. The *Caster* court held that a first mortgage, if less than fully secured, may be bifurcated under § 506 into a secured portion and an unsecured portion under § 1322(b)(2). *Id.* at 15.

In a very recent case, it was determined that the "truly secured portion of the residential real estate lender's claim does have special protection. Only the unsecured portion does not." *Hougland v. Lomas & Nettleton Co. (In re Hougland)*, 886 F.2d 1182, (9th Cir.1989). The *Hougland* court held that a claim of a lender on residential real estate could be bifurcated under § 506(a) into secured and unsecured components, and that the lender's rights under the unsecured portion could be modified without violating the prohibition of § 1322(b)(2). *Id.* It noted that several of the courts which had dealt with the matter had determined that § 1322(b)(2) was ambiguous. After referring to the legislative history of the provision to resolve the ambiguity, it is noted that these courts often came to diametrically opposed results.

In *Hougland*, the court finds not only that the two provisions are not in conflict, as some courts have held, but that they "are in harmony when read in the context of the whole statute." *Id.* It finds that the limiting, "other than" clause of § 1322(b)(2), following as it does the term "secured claim" and preceding references to the term "unsecured claim," must refer

to the former rather than the latter and that there is no reason to give those terms any different meaning than that given to them by § 506(a).

It is true that Congress could have made this meaning more clear, for instance by inserting the qualifying word "claim" before the word "secured" in the "other than" clause, or by specifically making § 506(a) applicable in the context of § 1322(b)(2). Unfortunately, however, it did not do so. The *Hougland* court, however, found that the meaning was implicit from the language employed, and that its conclusion as to the meaning was supported by the leading treatise on bankruptcy law. *See 5 Collier on Bankruptcy,* ¶ 1322.06(1)(a) (15th Ed.1979).

■ In *Tinsley, supra,* this court rejected the contention that § 1322(b)(2) was intended to be applied to "traditional, long-term mortgages," and that it should not be employed to protect the holders of short-term second or subsequent liens. This court also ruled in *Tinsley* that the common, "boiler plate" language in mortgage instruments, referring to insurance, rents and profits, buildings, improvements, machinery, equipment and the like, did not constitute additional security for the debt which would preclude the application of § 1322(b)(2). Nothing has been presented here which suggests that the court should change its views on either of those issues, and its holdings on them are thus reaffirmed.

In addition to these two holdings in *Tinsley,* however, this court, in a single brief paragraph, held, citing *Hynson, supra,* that bifurcation of a secured claim would itself constitute a modification of the rights of the holder of the secured claim. As has been noted above, the *Hynson* reasoning was subsequently rejected in its jurisdiction. *Harris, supra.* Such reasoning has similarly been rejected by other recent decisions, including *Hougland, supra.* Although this court's extremely brief holding on this point in *Tinsley* is unequivocal, it is clear that the court did not consider the possibility that § 1322(b)(2) should be limited in its applicability to claims determined

to be "secured" through § 506(a). Instead, this court held, without discussion or apparent consideration and assuming that the claim was a secured claim, that the application of § 506(a) would itself constitute a modification of the rights of the holder of the claim. It appears, in reviewing *Harris* and *Hougland,* and the other more recent decisions cited above, that such assumption was unwarranted and incorrect, particularly since the term "secured claim" has meaning only as defined in § 506(a).

■ Thus, although adhering to its other holdings in *Tinsley,* described above, this court is now convinced that it erred in holding that § 1322(b)(2) prohibited a determination under § 506(a) as to the extent to which a claim is secured and unsecured. In fact, a determination of the extent of the secured claim, available only under § 506(a), is necessary in order to determine the extent to which § 1322(b)(2) is applicable.

It should be noted here that, although Local relies in part on this court's holding in *Tinsley* which the court has now held to have been in error, Local can not claim prejudice by reason of such reliance. The *Tinsley* decision was issued June 27, 1989, more than five months after Local had purchased the first mortgage position of American Mortgage and Investment Company.

### DECISION

Based upon the foregoing, it is this court's view that the renewed objection by Local to debtors' amended chapter 13 plan should be overruled. To the extent Local's claim is a secured claim, debtors' plan may not modify the rights of the creditor. Thus, the amount of the payments required to be made under the governing documents may not be changed, although the result may be that the obligation secured by the mortgage may be paid in full much more rapidly. Neither, of course, may the interest rate or other provisions of the documents be altered. Such prohibition, however, relates only to the extent that the claim is determined to be a secured claim. Debtors are not prohibited, by § 1322(b)(2)

or otherwise, from proposing a plan which would modify Local's rights as to the unsecured portion of its claim.

Since the parties have not agreed upon the value of the property, proceedings pursuant to § 506(a) must be held to determine that value. After this has been done, debtors may amend their plan further to give effect to the valuation and to the court's determinations herein, and a further, hopefully final, confirmation hearing may be held. Should the parties agree upon the value of the property before the valuation hearing is held, a stipulation to that effect may be filed and the hearing will be unnecessary.

IT IS SO ORDERED.